# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION

| | | |
|---|---|---|
| AMERICANA ART CHINA COMPANY, INC., individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) | |
| Plaintiff, | ) | Case No.: 08 CV 6992 |
| v. | ) ) | |
| FOXFIRE PRINTING AND PACKAGING, INC., | ) ) ) | Judge Frederick J. Kapala |
| Defendant. | ) ) | |
| v. | ) ) | |
| CONTINENTAL CASUALTY COMPANY, | ) ) ) | |
| Intervenor. | ) ) | |

## MEMORANDUM IN SUPPORT
## OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Brian J. Wanca
David Oppenheim
Ryan M. Kelly
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: 847/368-1500

Phillip A. Bock
Tod A. Lewis
James M. Smith
BOCK & HATCH, LLC
134 N. La Salle Street, Suite 1000
Chicago, IL 60602
Telephone: 312/658-5500

Attorneys for Plaintiff

# TABLE OF CONTENTS

**Page**

I. Preliminary approval and dissemination of notice............................................. 1

II. Background of the litigation and settlement negotiations................................ 1

III. The settlement terms........................................................................................ 3

    A. The Class. ....................................................................................... 3

    B. Entry of judgment against Foxfire. ................................................ 4

    C. The Initial Settlement Fund. .......................................................... 4

    D. Class notice. .................................................................................... 4

    E. Distribution of the Initial Settlement Fund.................................... 4

    F. Class members' rights to opt-out or object. ................................... 5

    G. Attorney's fees and costs, and incentive awards............................ 5

    H. Future advertising faxes. ................................................................ 6

    I. Stipulations. .................................................................................... 6

    J. No releases against Foxfire............................................................. 7

    K. Collection from Hartford. ............................................................... 7

IV. The Class was notified about the settlement.................................................... 8

V. The Court should finally approve the settlement.............................................. 9

    A. Standard for judicial evaluation and approval. .............................. 9

    B. Factors to be considered in determining whether a settlement is fair, reasonable, and adequate....................................................... 9

        1. Strength on the merits compared to the settlement amount. ..... 9

        2. Foxfire's ability to pay. ........................................................... 11

        3. The costs of further litigation................................................... 12

        4. Opposition. .............................................................................. 12

        5. Absence of collusion among the parties. ................................. 12

        6. Opinion of counsel. ................................................................. 13

        7. Stage of proceedings and amount of discovery. ...................... 14

        8. Public interest........................................................................... 14

VI. The agreed attorneys' fees and expenses are reasonable and should be approved. ...................................................................................................... 14

i

VII.   Incentive payments to Plaintiff and Stonecrafters, Inc. are reasonable
       and appropriate. ................................................................................................ 20

VIII.  Conclusion. .......................................................................................................... 21

Plaintiff, Americana Art China Company, Inc. ("Plaintiff"), on behalf of itself and the settlement class of similarly-situated persons (the "Class"), request that the Court enter an order finally approving the parties' Settlement Agreement (the "Settlement" or the "Agreement"), filed with the Court on Jan. 18, 2013 (Doc. 227). The parties' proposed *Final Approval of Settlement Agreement and Judgment* is attached hereto as <u>Exhibit A</u>, and will be submitted to the Court in electronic format.

## I. Preliminary approval and dissemination of notice.

On January 4, 2013, the Court held a hearing to consider *Plaintiff's Second Amended Motion for Preliminary Approval of Proposed Class Action Settlement*. After considering the Settlement Agreement and plan of notice, the Court entered an order preliminarily approving the settlement. (Docs. 224-226). In accordance with the Court's orders, the parties caused the class notice to be sent to the Class by fax to the list of fax numbers involved in this case and, if the fax was unsuccessful after three attempts, by U.S. Mail. <u>Exhibit B</u>, Declaration of Nancy Johnson ("Johnson Declaration") at ¶ 5 b-h. No class member objected to Settlement. *Id.* at ¶ 9. Five of them (out of more than 28,000) requested exclusion from the Settlement and will not be bound by it. *Id.* at ¶ 8. As required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 (b) ("CAFA"), federal and state officials were notified about the Settlement, and none of them has objected either. *Id.* at ¶ 5 a.

## II. Background of the litigation and settlement negotiations.

During the litigation, Plaintiff contended that Foxfire violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA"), by sending

advertisements by fax without the recipients' prior express invitation or permission, and without the opt-out notice required by the TCPA and the regulations promulgated by the Federal Communications Commission (the "FCC").

In 2011, after substantial discovery and motion practice, the parties engaged in mediation and settlement negotiations conducted by Magistrate Judge Mahoney. Plaintiff learned that Foxfire's assets are very limited, other than substantial insurance purchased from Hartford Casualty Ins. Co. ("Hartford") and Continental Casualty Co. ("Continental"). After receiving Foxfire's tender, Continental had denied all coverage obligations. Hartford assigned attorneys to provide a defense after sending a reservation of rights letter to Foxfire, and then engaged in mediation and settlement negotiations. After the parties reached an impasse in their negotiations with Hartford, Plaintiff and Foxfire reached a settlement in which a judgment would be entered against Foxfire and in favor of the members of the Class in the total amount of $18 million, collectible only from Foxfire's two insurers. The Court preliminarily approved that settlement and the parties notified the members of the Class.

On April 30, 2012, the Court granted Continental leave to intervene and stayed this action. The parties then engaged the services of a private mediator with JAMS, New York attorney Michael Young. No agreement was reached with Hartford, but Continental agreed to fund a settlement of $6.1 million of the $18 million judgment to be entered against Foxfire, in exchange for a release of claims against Continental and its insurance policy. Pursuant to the parties' revised

settlement agreement (Doc. 227), the remaining $11.9 million would be collectible only from Hartford, and not from Foxfire's other assets and not from Continental.

On November 27, 2012, Plaintiff moved for approval of the revised settlement agreement. (Doc. 208). Hartford filed a motion in opposition, requesting leave to intervene and object to certain terms of the revised settlement. (Doc. 210). Following the filing of Hartford's motion, the settling parties and Hartford had extensive discussions, which resulted in a further revised settlement agreement that resolved Hartford's opposition to the settlement. Hartford subsequently moved to withdraw its motion to intervene (Doc. 218), and the Court permitted the intervention motion to be withdrawn on January 2, 2013. (Doc. 223).

## III. The settlement terms.

The key terms of the Agreement are as follows:

### A. The Class.

As reflected in the *Order Preliminarily Approving the Class Action Settlement and Approving the Class Notice* entered on January 10, 2013, the parties stipulated to, and the Court granted, certification of a settlement class, pursuant to Fed. R. Civ. P. 23, defined as follows:

> All persons to whom Foxfire or its agents, including but not limited to WestFax, Inc., and FAXTS, Inc., sent facsimiles advertising Foxfire's products or services during the period February 15, 2008 through November 6, 2008 [Doc. 226 at ¶ 2 (defining the "Class").

The Parties stipulated that, during the class period, Foxfire's advertisements were successfully sent by fax to and received by the 28,879 persons in the Class.

**B.  Entry of judgment against Foxfire.**

As part of the settlement, the parties agreed that judgment will be entered against Foxfire and in favor of the Class in the total amount of $18,000,000.00 (the "Judgment"), with a covenant not to execute against Foxfire's assets other than its Hartford insurance policies after payments by Continental described herein (in satisfaction of $6,100,000.00). The parties' proposed Final Approval Order is attached hereto as Exhibit A and will be submitted to the Court for electronic entry.

**C.  The Initial Settlement Fund.**

Continental agreed to make a common fund of $6,100,000.00 (the "Initial Settlement Fund") available to satisfy $6,100,000.00 of the Judgment and all claims that could be made against the insurance Continental issued to Foxfire.

**D.  Class notice.**

Plaintiff hired CAC Services Group, LLC of Burnsville, MN, the third-party "Claims Administrator," to send the court-approved notice to the Class and to administer their claims. CAC sent notice by fax to each of the subject telephone numbers, as the parties did regarding the first settlement. Johnson Declaration at ¶ 5 b-h. For the fax notices that were unsuccessful, CAC sent the notices by first class mail when reasonably practicable. *Id.* No persons objected to the Settlement and only five persons requested exclusion. Johnson Declaration at ¶¶ 8, 9, Ex. 3.

**E.  Distribution of the Initial Settlement Fund.**

To receive a monetary payment from the Initial Settlement Fund, a member of the Class was required to submit a Claim Form identifying himself as a member of the Class by affirming ownership of the relevant fax number(s) at the time

4

Foxfire's faxes were sent. Each member of the Class who submitted a timely and valid Claim Form will be mailed a check providing payment in the amount of $55.03 (the amount calculated by dividing $6,100,000 by the total number of faxes received) for each Foxfire advertisement the person's fax number(s) received during the period February 15, 2008, through November 6, 2008, using the analysis of Foxfire's transmission records prepared by Plaintiff's expert witness. *See* Second Expert Report of Robert Biggerstaff (Dkt. 208, Ex. B thereto). Any member of the Class who did not submit a Claim Form for a share of the Initial Settlement Fund will remain eligible to receive a share of monies recovered from Hartford, if any, during the coverage litigation regarding the remaining $11.9 million of the judgment.

### F. Class members' rights to opt-out or object.

Five persons opted out of the Class and will not be bound by the outcome of this Litigation and shall not be entitled to any of the monetary benefits set forth in the Settlement Agreement. Johnson Declaration at ¶ 8, Ex. 3. Nobody objected to any part of the settlement. *Id.* at ¶ 9.

### G. Attorney's fees and costs, and incentive awards.

Subject to the Court's approval, Continental agreed to pay incentive awards of $15,000.00 to Plaintiff and to Stonecrafters for services on behalf of the Class, to pay Plaintiff's attorneys fees equal to one-third of the Initial Settlement Fund, and to pay up to $105,000 of the expenses Plaintiff's attorneys have incurred in the Litigation (including the costs of the Claims Administrator).

### H.    Future advertising faxes.

Foxfire has agreed that it will not send any advertisement by fax without first obtaining the recipients' express invitation or permission or in the absence of an established business relationship, as defined by the TCPA and the FCC rules and regulations, and that it also will include a valid opt-out notice on any such fax, as required by 47 C.F.R. 64.1200 and the FCC rules and regulations.

### I.    Stipulations.

The parties stipulated to certain facts, and the Affidavit of John Ferretti (Foxfire's CEO) establishes others. (Dkt. 208, Ex. C thereto). The parties agreed to request inclusion of these facts in the Court's orders pertaining to the settlement:

1.    This settlement was made in reasonable anticipation of Foxfire's liability to Plaintiff in the Litigation;

2.    The settlement amount is fair and reasonable in view of Foxfire's potential liability to Plaintiff in the Litigation;

3.    The settlement was entered into in good faith to resolve Foxfire's potential liability to Plaintiff in the Litigation;

4.    Foxfire directed that advertisements be faxed between February 15, 2008 and November 6, 2008, and Plaintiff has advised, on the basis of expert analysis, that 110,853 were successfully sent, which faxes are admitted as to Plaintiff and the Class to have been advertisements that were received and were sent without prior express permission or invitation and did not contain the opt out language required by 47 C.F.R. 64.1200;

5.    By including opt-out language on its advertising faxes and

honoring opt-out requests from fax recipients, Foxfire believed it was in compliance with applicable law because WestFax had represented that it would "provide its services only in strict compliance with applicable federal, state and local laws, rules and regulations," and Foxfire entrusted, and reasonably so, its fax broadcaster(s) with ensuring compliance with such statutory and regulatory requirements, if any, applicable to facsimile transmission of advertisements. Foxfire had no actual knowledge that its conduct was or would later be construed to be, in violation of any such statute or regulations;

6.      Based on Foxfire and Plaintiff's agreement, and as demonstrated by the affidavit of John Ferretti presented to the Court, Foxfire did not willfully or knowingly violate the TCPA and therefore treble damages are inappropriate. Settlement Agreement, ¶ 11.

### J.      No releases against Foxfire.

The members of the Class do not release their claims against Foxfire, but instead have covenanted not to execute the judgment against Foxfire's assets other than the Hartford insurance policies referenced in the Settlement Agreement. The Class releases claims against Continental related to insurance claims about Foxfire's fax ads, but not against Hartford. The Class will be enjoined from pursuing any new action against Foxfire for the claims brought in this Action.

### K.      Collection from Hartford.

If Plaintiff prevails against or reaches a settlement with Hartford, each member of the Class will be mailed his *pro rata* share of the additional funds

recovered. That recovery is subject to further litigation and compromise, and a

deduction for attorney's fees equal to one third of the recovery plus additional

litigation expenses incurred. Any excess, undistributed funds will be distributed

only subject to the Court's approval.

## IV.   The Class was notified about the settlement.

Rule 23 (e) (1) requires, "The court must direct notice in a reasonable manner

to all class members who would be bound by the proposal." Notice of the settlement

must satisfy due process. *Maher v. Zapata Corp.*, 714 F. 2d 436, 450-453 (5th Cir.

1983); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F. 2d 956, 963 (3d Cir. 1983).

The court is vested with wide discretion both as to the manner in which notice is

given and the form that notice is to take. 7B Charles Alan Wright et al., FEDERAL

PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2005). Here, in compliance with the

Court's Orders, CAC sent the notice by fax and, if unsuccessful after three fax

attempts, by U.S. Mail. Johnson Declaration at ¶ 5 a.

The content of the parties' Notice complied with Rule 23 (c) (2) (B), which

requires that the notice "must clearly and concisely state in plain, easily understood

language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the

class claims, issues, or defenses; (iv) that a class member may enter an appearance

through an attorney if the member so desires; (v) that the court will exclude from

the class any member who requests exclusion; (vi) the time and manner for

requesting exclusion; and (vii) the binding effect of a class judgment on members

under Rule 23 (c) (3)." The class notice stated all of those things. Johnson

Declaration at Ex. 2.

V.     **The Court should finally approve the settlement.**

   A.     **Standard for judicial evaluation and approval.**

   A court should approve a settlement if the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e) (1) (C). *See Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006); *DHL v. Thoroughbred Technology + Telecom.*, 309 F.3d 978, 986 (7th Cir. 2002). It is well-established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.").

   B.     **Factors to be considered in determining whether a settlement is fair, reasonable, and adequate.**

   Courts typically consider the following factors in evaluating a class action settlement: (1) the strength of the plaintiff's case on the merits compared to the amount of the settlement; (2) the defendant's ability to pay; (3) the likely complexity, length and expense of further litigation; (4) opposition to the settlement from members of the class; (5) evidence of collusion; (6) opinions of counsel; (7) the stage of the proceedings and the amount of discovery completed at the time of settlement; and (8) the public interest. *Isby v. Bayh*, 75 F. 3d 1191, 1198-1199 (7th Cir. 1996). These factors support approval of the settlement here.

   1.     **Strength on the merits compared to the settlement amount.**

   The parties agree that the Class includes approximately 28,879 persons who received Foxfire's 110,853 advertisements by fax during the class period. A finding of Foxfire's liability to the Class under the TCPA, with statutory damages of $500 -

9

$1,500 per fax, would result in a damage award ranging from $55,000,000 -
$166,000,000. Foxfire did not intend to injure the fax recipients. *See* Affidavit of
John Ferretti (Doc. 208, Ex. C). As a result, it is likely that a judgment would total
$55,426,500.00 ($500 x 110,853 faxes). Such a judgment would far exceed Foxfire's
non-insurance assets. Given Foxfire's inability to pay such a judgment from
anything other than its insurance assets, this is a reasonable compromise of the
Class's claims.

Plaintiff and Foxfire reached a settlement in which judgment would be
entered against Foxfire and in favor of the members of the Class in the total amount
of $18 million, collectible only from Foxfire's insurers – Continental and Hartford.
Although no agreement has been reached with Hartford, Continental has agreed to
contribute $6.1 million toward the judgment amount. This allowed members of the
Class to obtain payments now in the amount $55.03 for each Foxfire advertisement
their fax numbers received during the period February 15, 2008 through November
6, 2008. Moreover, the settlement permits the members of the Class to pursue the
remaining $11.9 million judgment from Hartford, giving them an opportunity to
obtain even more.

Based upon these facts, Foxfire agreed to entry of the judgment and the
parties agreed to particular findings in the final approval order demonstrating the
reasonableness of the settlement. *See Guillen ex rel. Guillen v. Potomac Ins. Co. of
Illinois*, 203 Ill. 2d 141, 163 (2003); *Pietras v. Sentry Ins. Co.*, 513 F. Supp. 2d 983,
986-87 (N.D. Ill. 2007); *Pekin Ins. Co. v. XData Solutions, Inc.*, 2011 WL 4578485,

*7 (Ill. App. Ct. Sept. 30, 2011).

This settlement is a fair, reasonable, and adequate result for the Class. Except for insurance policies, Foxfire lacks assets to pay a class-wide settlement or judgment in this case.

### 2.    Foxfire's ability to pay.

In the context of a classwide settlement, courts typically consider the defendant's ability to pay. *See Hispanics United of DuPage County v. Addison, Illinois*, 988 F. Supp. 1130, 1150 (N.D. Ill. 1997) (Castillo, J.). Here, Foxfire cannot pay a judgment except through its insurance assets. Foxfire would have to file for bankruptcy if the Class were to pursue collection of a multi-million dollar award from its noninsurance assets. As unsecured judgment creditors, the class members would likely recover less than the costs and expenses of litigating their claims in bankruptcy. But Foxfire's insurance provides a source from which the Class can obtain compensation for their claims.

Foxfire tendered the defense of this action to its insurers, Hartford and Continental. Based on certain terms and exclusions in its policy, Continental denied Foxfire's tender of defense and did not defend Foxfire in the lawsuit, but ultimately Continental agreed to fund part of the settlement to avoid the costs and risks presented by coverage litigation. Hartford issued a reservation of rights letter and defended Foxfire in the lawsuit, later filed a declaratory judgment action to avoid coverage. The parties are involved in litigation with Hartford in the Superior Court for Hartford County, Connecticut.

11

### 3. The costs of further litigation.

Class actions have a well-deserved reputation for complexity. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 315 (N.D. Ga. 1993) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). Because Foxfire's insurance policies are the only practical source for the satisfaction of a judgment in the Class's favor, it is in the Class's best interests to avoid future litigation costs that do not relate to proving coverage for their claims. Further litigation of their claims against Foxfire in this Court, on appeal, or in bankruptcy will be expensive and will not move them closer to obtaining substantial relief. On the other hand, if this action is settled, the Class can recover money now from Continental and focus additional efforts on obtaining insurance funds from Hartford.

### 4. Opposition.

A low rate of opt-outs or opposition reflects favorably on a settlement. *E.g., In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020-21 (N.D. Ill. 2001) (high acceptance rate "is strong circumstantial evidence in favor of the settlements"). Here, the class members overwhelmingly supported the settlement, as no member objected and only 5 opted out. Additionally, the parties notified the United States Attorney General and the attorneys general of the States in which class members are located about the settlement, as required by the Class Action Fairness Act, 28 U.S.C. § 1715, and none of them objected to the settlement. Johnson Declaration at ¶ 5 a. The lack of any opposition supports the settlement.

### 5. Absence of collusion among the parties.

"Settlement negotiations that are conducted at arm's length and in good faith

demonstrate that a settlement is not the product of collusion." *Retsky Family Ltd. Partnership v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, * 2 (N.D. Ill. Dec. 10, 2001) (Darrah, J.). Here, the settlement is not the product of collusion among the parties, but arm's length negotiations through Magistrate Judge Mahoney and a private mediator.

### 6. Opinion of counsel.

Plaintiff and its counsel concluded that the terms and conditions provided for in this Agreement are fair, reasonable, adequate, and in the best interests of the Class as a means of resolving this litigation. Plaintiff's counsel have substantial experience litigating class actions, claims about unsolicited faxes, and insurance coverage issues. They have been appointed class counsel in dozens of cases. *See, e.g., G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. C 5953, 2009 WL 2581324, *6 (N.D. Ill. Aug. 20, 2009) (Kendall, J.); *Green v. Service Master On Location Services, Corp.*, No. 07 C 4705, 2009 WL 1810769, *4 (N.D. Ill. June 22, 2009) (Hibbler, J.); *Hinman v. M and M Rental Center, Inc.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008) (Bucklo, J.); *CE Design, Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009) (Kennelly, J.); *Holtzman v. Turza*, No. 08 C 2014, 2009 WL 3334909 (N.D. Ill. Oct. 14, 2009) (Gettleman, J.); *G.M. Sign, Inc. v. Group C Comm., Inc.*, No. 08-CV-4521, 2010 WL 744262 (N.D. Ill. Feb. 25, 2010) (Darrah, J.).

They have litigated many cases involving insurance issues for class actions. *See, e.g., Valley Forge Ins. Co. v. Swiderski Electronics, Inc.,* 223 Ill. 2d 352 (Ill. 2006); *Eclipse Manufacturing Co. v. U.S. Compliance Co.,* 2007 WL 4259439 (Ill. App. Ct. 2007); *Ins. Corp. of Hanover v. Shelborne Assoc.*, 905 N.E.2d 976 (Ill. App.

1st Dist. 2009); *Pekin Ins. Co. v. XData Solutions, Inc.*, 958 N.E.2d 397, 2011 WL 4578485, 2011 IL App (1st) 102,769 (1st Dist. Sept. 30, 2011); *Owners Ins. Co. v. European Auto Works, Inc.,* 695 F.3d 814 (8th Cir. 2012); *Terra Nova Ins. Co. v. Fray-Witzer,* 869 N.E.2d 565, 449 Mass. 406 (Mass. 2007).

Under these circumstances, the Court should give weight to Class Counsel's opinions about the settlement.

### 7. Stage of proceedings and amount of discovery.

The stage of proceedings and amount of discovery supports final approval. The members of the class have been identified and notified. The parties engaged in discovery and confrontational briefing about class certification and merits issues, and exchanged documents and data sufficient for Plaintiff and its attorneys to evaluate the strength of this case.

### 8. Public interest.

Courts have held that a settlement of class action litigation serves the public interest. *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980). The public interest is best served by ending this case now even though additional insurance coverage issues will have to be litigated against Hartford. Settling the claims about Foxfire's fax advertisements in this single action is the most efficient way to resolve the controversy.

## VI. The agreed attorneys' fees and expenses are reasonable and should be approved.

Continental has agreed to pay one third of the Initial Settlement Fund as attorneys' fees to Class Counsel, and also to pay their litigation expenses (including

the cost of the Claims Administrator) up to $105,000. Settlement Agreement ¶ 14. The Notice told the class members about the parties' agreement about attorneys' fees and expenses, and no member complained or objected. Notice ¶ D; Johnson Dec. at ¶ 9.

It is well settled that the attorneys who create a benefit for class members are entitled to compensation for their services. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). In common fund cases, such as this one, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). "When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund." *Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998) (affirming award of 38% of $20 million).[1] "This method of recovering attorneys' fees is known as the 'common-fund' doctrine, and holds that class counsel who wins a settlement or judgment creating a commonly-held fund for the benefit of the class is entitled to a reasonable fee drawn from that fund." *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 814 (E.D. WI 2009) (Stadtmueller, J.) (*citing Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980); *Florin v. Nationsbank of Georgia, N.A.,* 34 F.3d 560, 563 (7th Cir. 1994)).

"[W]hen common funds are involved, the district court determines a reasonable fee to be paid out of the common fund, and in doing so, considers the

---

[1]      State courts in Illinois apply the same principals. *See Brundidge v. Glendale Federal Bank, F.S.B.*, 168 Ill. 2d 235, 238 (1995) ("[O]ne who 'creates, preserves, or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees.'").

value the marketplace would have assigned to the case at the outset." *Goodell v. Charter Communications, LLC*, No. 08-cv-512-bbc, 2010 WL 3259349 at *1 (W.D. WI. Aug. 17, 2010) (Crabb, J.) (discussing cases). *See Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007) ("In deciding fee levels in common fund cases, we have consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'"), *citing In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir.2001); *In re Continental Illinois Securities Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) (market for legal services paid on a contingency basis shows the proper percentage to apply in a class action that creates a common fund for the benefit of the class).

"[T]he criteria are satisfied when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump–sum judgment recovered on his behalf." *Boeing*, 444 U.S. at 479. Here, as in *Boeing*, the class members were sent a Notice with an attached claim form that would enable them "to share the harvest of the lawsuit upon proof of their identity"; by identifying themselves as the owner of one or more of the subject fax numbers in 2008. *Boeing,* 444 U.S. at 480 (the right of absentee class members "to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel"). *See also Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) ("The entire Fund, and not some portion thereof, is created through the

efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not."); 4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 14:6, p. 570 (4th ed. 2002) (stating that *Boeing* settled the issue of whether the benchmark common fund amount for fee award purposes is made up of the amount claimed by class members or the amount potentially available to class members by ruling that class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed).

Continental's agreement to pay attorneys' fees of one third of the Initial Settlement Fund is within the approved range for attorneys' fees in common fund settlements of contingency fee class actions. *See Taubenfeld v. Aon Corp.*, 415 F.3d 597 (7th Cir. 2005) (approving award of fees equal to 30% of $7.25 million settlement plus $111,054.06 in expenses and citing with approval a submission showing thirteen cases in the Northern District with awards of 30-39% of common funds in class actions); *Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998) (awarding 38% of the fund as fees); *Waller v. Ray Wood, et al.*, No. 08-cv-5597 (N.D. Ill., Feb. 14, 2012) (Kapala, J.) (awarding fees of 33% of $1.75 million settlement fund in ERISA class action settlement) (Doc. 189); *First Interstate Bank of Nevada, N.A. v. National Republic Bank of Chicago,* No. 80 C 6401 (N.D. Ill. Feb. 12, 1988) (Plunkett, J.) (39% fee); *Gaskill v. Gordon*, 942 F. Supp. 382 (N.D. Ill. Sept. 30, 1996) (Williams, J.), *aff'd,* 160 F.3d 361 (7th Cir. 1998) (receivership case) (38% fee);

*In re Nuveen Fund Lit.*, No. 94 C 360 (N.D. Ill. June 3, 1997) (Manning, J.) (33.3% fee); *In re Soybean Futures Lit.*, No. 89 C 7009 (N.D. Ill. Nov. 27, 1996) (Norgle, J.) (33.3% fee); *Liebhard v. Square D Co.,* No. 91 C 1103 (N.D. Ill. Jun. 6, 1993) (Plunkett, J.) (33.3% fee); *Goldsmith v. Technology Solutions, Co.*, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. Oct. 10, 1995) (Guzman, J.) (33.3% fee); *Hammond v. Hendrickson*, No. 85 C 9829 (N.D. Ill. Nov. 20, 1992) (Aspen, J.) (33.3% fee); *In re Caremark International Sec. Lit.*, No. 94 C 4751 (N.D. Ill. Dec. 15, 1997) (Plunkett, J.) (33% fee); *Saf-T-Gard International, Inc. v. Seiko Corp. of America*, No. 09 C 0776 (N.D. Ill. Jan. 14, 2011) (Bucklo, J.) (Doc. 100) (33% fee).

More specifically, one-third of the common fund is the market rate for claims about unsolicited faxes and TCPA claims, or the rate at which attorneys would undertake such claims on a contingency fee basis, given that there is no statutory fee shifting to the defendants. *See Bailey Brothers Plumbing, Heating and Air Conditioning, Inc. v. Papa's LeatherBarn, LLC*, No. CIV-10-80-W (W.D. Okla. Nov. 20, 2012) (West, J.) (Doc. 97) (awarding fees of one third of fund); *Avio Inc. v. Creative Office Solutions, Inc.*, No. 2:10-CV-10622 (E.D. Mich. Dec. 10, 2012) (Roberts, J.) (Doc. 31) (same); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, 08 C 5953 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (Doc. 146) (same); *Saf-T-Gard International, Inc. v. Seiko Corp. of America*, No. 09 C 0776 (N.D. Ill. Jan. 14, 2011) (Bucklo, J.) (Doc. 100) (same); *Targin Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd.*, 09 C 1399 (N.D. Ill. May 26, 2011) (Coleman, J.) (Doc. 140) (same); *Holtzman v. CCH*, 07 C 7033 (N.D. Ill. Sept. 30, 2009) (Nordberg, J.) (Doc. 33) (same); *CE*

18

*Design, Ltd. v. Exterior Systems, Inc.*, 07 C 66 (N.D. Ill. Dec. 6, 2007) (Darrah, J.)

(Doc. 32-2) (same); *Hinman v. M&M Rentals, Inc.*, 06 C 1156 (N.D. Ill. Oct. 6, 2009)

(Bucklo, J.) (Doc. 225) (same); *CE Design Ltd. v. Cy's Crab House North, Inc.*, No.

07 C 5456 (Kennelly, J.) (Doc. 424 ¶ I) (same); *Eclipse v. U.S. Compliance*, No. 03

CH 922 (Lake County, IL, Dec. 23, 2008) (same); *G.M. Signs, Inc. v. BackHauLine*,

07 CH 758 (Lake County, IL, Dec. 10, 2009) (same); *DeRose Corp. v. Goyke Health

Center*, No. 06 CH 6681 (Cook County, IL, Dec. 11, 2008) (same); *Windmill Nursing

Pavilion LTD. v. Unitherm, Inc.*, No. 09 CH 16030 (Cook County, IL Dec. 17, 2010)

(same); *Tabass v. Castle Screen Print Corp.*, No. 04 L 1394 (DuPage County, IL,

Dec. 10, 2008 (same); *BNS, Limited v. Redondo Family Chiropractic, Inc.*, No. 09-2-

19352-5 SEA (King County, WA, Nov. 30, 2010) (same); *Fun Services of Kansas

City, Inc. v. Streetglow, Inc.*, No. 09-cv-02679 (Dist. Ct. Johnson County, KS)

(Elliott, J.) (same); *B.Z.B. Enterprises, Inc. v. Mag & Son, LLC*, C.A. No. PC 09-7201

(Superior Court, RI, Aug. 2, 2012) (same); *All American Painting, LLC v. Dean

Weich, Inc.*, No. 09SL-CC05352 (St. Louis County, MO, June 10, 2011) (Ross, J.)

(same); *Medical West Ballas Pharmacy, Ltd. v. Bios Biochemicals Corp.*, No. 09SL-

CC05349 (St. Louis County, MO, Nov. 18, 2011) (Jamison, J) (same); *Slater v.

Richgeis, LLC*, PC 09-7202 (Superior Court, RI, March 20, 2013) (Carnes, J.) (same).

*See also Anderson Office Supply, Inc. v. Advanced Medical Assoc., et al.*, No. 2009-

CV-178 (Harvey County, KS, Feb. 1, 2013) (Dickinson, J.) (awarding fees equal to

40% of the Settlement Fund after deducting reasonable litigation expenses);

*Accounting Outsourcing, LLC. V. Verizon Wireless,* 2007 U.S. Dist. LEXIS 97153

(M.D. La. 2007) (awarding fees of 36% of the fund); *Community Vocational Schools v. Turner Educational Products, LLC*, No. 0800853-31-1 (Bucks County, PA, Aug. 4, 2010) (fees of 37.96% of fund).

Class Counsel undertook this case on a contingency basis, applying their unique experiences and capabilities to achieve an excellent result for the Class. They always faced the risk of nonpayment, not only for their time but also for their out-of-pocket costs. The Court should approve the Parties' agreement to pay Class Counsel attorneys' fees equal to one-third of the Initial Settlement Fund because that percentage is within the market rate for this type of case and it is otherwise fair and reasonable under the circumstances. And the Court should approve Continental's agreement to reimburse litigation expenses of up to $105,000.

## VII. Incentive payments to Plaintiff and Stonecrafters, Inc. are reasonable and appropriate.

Continental has agreed to pay Plaintiff and Stonecrafters, Inc. $15,000 from the Initial Settlement Fund as incentive payments for services on behalf of the Class. Courts routinely award such "incentive payments" to the person who assumes the special litigation burden of class representative and thereby benefit the entire class. *See Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 incentive award to class representative because "a named plaintiff is an essential ingredient of any class action, [and] an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *Raymundo v. Winnebago County*, 07-cv-50087 (N.D.Ill., April 11, 2013) (Kapala, J.) (approving incentive award of $45,000 to named plaintiff); *In re Dun & Bradstreet Credit*

*Services Customer Litigation*, 130 F.R.D. 366, 367 (S.D. Ohio 1990) (approving two incentive awards of $55,000 and three of $35,000 to five representatives); *CE Design Ltd. v. Cy's Crab House North, Inc.*, No. 07 C 5456 (Kennelly, J.) (Doc. 424 ¶ I) (approving $25,000 incentive award to named plaintiff in TCPA settlement); *Saf-T-Guard International, Inc. v. Seiko Corp. of America*, 09 C 0776 (N.D. Ill. Jan. 14, 2011) (Bucklo, J.) (Doc. 100) (approving $12,000 incentive award to class representative in TCPA settlement).

Class action suits conserve judicial and litigant resources. *GMAC Mtge. Corp. v. Stapleton*, 236 Ill. App. 3d 486, 497, *citing* C. Krislov, Scrutiny of the Bounty: Incentive Awards for Plaintiff in Class Litigation, 78 Ill. B.J. 286 (June 1990). Class representatives assume burdens of litigation that absent class members do not shoulder and do so without promise of a reward and with the risk that the litigation may not succeed. The class representatives in this case were no exception. But for Plaintiff's and Stonecrafters' initiative and participation, the benefits available to the other class members would not have been realized. The Court should approve the parties' agreement regarding Plaintiff's incentive payment, and award the requested amounts.

## VIII. Conclusion.

WHEREFORE, Plaintiff, Americana Art China Company, Inc., respectfully requests that this Court enter a final approval order in the form attached as Exhibit 1 to the Agreement and submitted herewith as Exhibit A.

Respectfully submitted,

AMERICANA ART CHINA COMPANY, INC.,

By: /s/ Phillip A. Bock
      One of its attorneys

Brian J. Wanca
David Oppenheim
Ryan M. Kelly
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: 847/368-1500

Phillip A. Bock
Tod A. Lewis
James M. Smith
BOCK & HATCH, LLC
134 N. La Salle Street, Suite 1000
Chicago, IL 60602
Telephone: 312/658-5500