# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 08 C 6992 | **DATE** | 5/21/2013 |
| **CASE TITLE** | Stonecrafters, Inc. vs. Foxfire Printing and Packaging, Inc. | | |

**DOCKET ENTRY TEXT:**

Plaintiff's motion for attorney's fees and expenses [229] is denied without prejudice. Plaintiff is granted leave to file an amended motion for attorney's fees and expenses within 30 days of this order. The court reserves ruling on the fairness of the class settlement.

■[ For further details see text below.]

Docketing to mail notices.

---

This case comes before the court for final approval of a class action settlement between plaintiff, Americana Art China Company, Inc.; defendant, Foxfire Printing and Packaging, Inc.; and intervenor, Continental Casualty Company. The court held a fairness hearing and considered plaintiff's memorandum in support of final approval and its supplemental submission in support of its motion for an award of attorney's fees and expenses.

The terms of the settlement agreement contemplate a judgment in favor of the class and against Foxfire in the amount of $18,000,000 to be collected only against Foxfire's insurance policies. Continental, one of two insurance companies that could potentially be liable to pay the judgment, agreed to make a total of $6,100,000 in funds available to pay: (1) claims made by class members in the amount of $55.03 per fax received; (2) incentive awards to plaintiff and the former plaintiff, Stonecrafters, Inc., in the amount of $15,000 each; (3) attorney's fees of $2,033,333.33, which represents one-third of the settlement fund; and (4) expenses to class counsel not to exceed $105,000. Notably, the settlement agreement also provided that any unclaimed funds would "remain with or revert to Continental or Foxfire as separately agreed between Continental and Foxfire."

At the fairness hearing, which was held after the claims period had concluded, the court asked class counsel how many claims had been submitted (as this number was nowhere to be found in plaintiff's written submission). The court learned that a total of 1,820 class members made claims (out of 28,879 identified fax numbers, or approximately 6.3%) representing a total of 7,222 faxes (out of 110,853 fax transmissions, or approximately 6.5%). Based on the $55.03 per-claim amount in the settlement agreement, the class members are in line to receive a total of $397,426.66 (approximately 6.5% of the total settlement fund).[1] Despite this relatively low recovery for the class, class counsel requested the full $2,033,333.33 amount of attorney's fees set forth in the settlement agreement, which is more than five times the amount of recovery by the class members, and sought reimbursement of $104,197.95 in expenses.

In order to assess the reasonableness of the settlement, the court requested class counsel to submit additional information, including a "lodestar" calculation for their attorney's fees and some documentation regarding the claimed expenses. With one exception noted below, counsel submitted the requested information

in a timely fashion. In total, counsel spent a combined 1,507.8 hours on this litigation for a total lodestar amount of $765,132.50. The court has reviewed counsel's lodestar submission and finds the submission to be reasonable given the length and complexity of this case. The submission regarding expenses, however, is not complete, as counsel has only provided documentation for $34,234.10 in expenses incurred by the Bock & Hatch law firm, which the court notes is primarily based on the cost of the independent claims administrator. The Anderson + Wanca law firm claims a total of $69,963.85 in expenses on their "Summary of Account" exhibit, but there is no further documentation to validate or even explain this amount. Accordingly, at this time, the court can only approve $34,234.10 in expenses, but the court will consider any additional documentation submitted on this matter in a subsequent filing.

As for attorney's fees, plaintiff urges the court to award attorney's fees based on a percentage of the total sum made available to the class through the efforts of counsel (i.e. $6.1 million), regardless of the amount actually claimed by individual class members. This approach finds support in the Supreme Court's opinion in Boeing Co. v. Van Gemert, 444 U.S. 472 (1980), which discusses the "common-fund doctrine." See id. at 478-82. As the Court explained, the right of class members "to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel." Id. at 480. Thus, the Court concluded that it was equitable to require "every member of the class to share attorney's fees to the same extent that he can share the recovery." Id. Based on this authority, several circuit courts have held that class counsel can collect fees based on a percentage of the total funds made available, regardless of the amount of funds actually claimed. See, e.g., In re: Baby Prods. Antitrust Litig., 708 F.3d 163, 177 (3d Cir. 2013); Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423, 437 (2d Cir. 2007); Waters v. Int'l Precious Metals Corp., 190 F.3d 1291, 1294-97 (11th Cir. 1999); Williams v. MGM-Pathe Commc'ns Co., 129 F.3d 1026, 1027 (9th Cir. 1997). But see Strong v. Bellsouth Telecomms., Inc., 137 F.3d 844, (5th Cir. 1998) (concluding that Boeing was inapplicable because "no fund was established at all" and the $64 million common fund figure was merely a "phantom").

Under Seventh Circuit precedent, the court is not required to award attorney's fees based on the percentage of the fund, and instead has the discretion to apply either the percentage method or the traditional lodestar method. See Florin v. Nationsbank of Ga., N.A., 34 F.3d 560, 566 (7th Cir. 1994) ("[W]e do not believe that the lodestar approach is so flawed that it should be abandoned. Instead, we are of the opinion that both the lodestar approach and the percentage approach may be appropriate in determining attorney's fee awards, depending on the circumstances. We therefore restate the law of this circuit that in common fund cases, the decision whether to use a percentage method or a lodestar method remains in the discretion of the district court."); Harman v. Lyphomed, Inc., 945 F.2d 969, 975 (7th Cir. 1991) ("We do not think the judge abused his discretion by rejecting the percentage approach. While we do not rule out use of the percentage method when the district court finds it appropriate, neither do we require its use in all common fund cases. The decision of whether to use a percentage method remains in the discretion of the district court." (citation omitted)). As the Seventh Circuit has noted, the lodestar approach has certain advantages over the percentage method, including the fact that it alleviates "concerns that a percentage approach result[s] in over-compensation for attorneys," it provides "greater accountability" for the attorneys by requiring an explicit accounting of their hours and rates, and it allows for reasonable compensation based on both the hours worked and the risk assumed in undertaking the case. Harman, 945 F.2d at 974.

Although the court recognizes that the percentage method is commonly used in cases such as this one, see Gaskill v. Gordon, 160 F.3d 361, 362 (7th Cir. 1998) ("When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund . . . ."), and that counsel has provided the court with numerous examples of the percentage method being approved (mostly from their own previous cases), the court nevertheless finds that, under the circumstances of this case, the lodestar method provides a more reasonable basis to determine an appropriate award of attorney's fees. While it is true that counsel made available a fund in the amount of $6.1 million to pay for class member's claims, it is clear to the court that this is somewhat

of a contrived figure[2] and that counsel, with their vast experience litigating TCPA cases,[3] would have known that the actual recovery amount would be significantly less than the total fund. In fact, at the outset, the settlement agreement only provided sufficient funding for less than 65% of the potential claims after deducting the anticipated incentive awards, attorney's fees, and expenses. Because the actual recovery amount in this case is less than 7% of the settlement fund,[4] the court finds that the percentage method does not produce a reasonable attorney's fee award in this case, but instead would result in over-compensation for the attorneys and cast doubt on the integrity of the settlement.[5]

As indicated above, the court finds counsel's lodestar amount of $765,132.50, based on the number of hours worked and counsel's hourly rate, to be reasonable. The court also recognizes that, under the lodestar method, the court must assess a risk multiplier "to account for the contingent nature of the compensation" at the time counsel undertook this litigation. Skelton v. Gen. Motors Corp., 860 F.2d 250, 258 (7th Cir. 1988); see also Harman, 945 F.2d at 976 ("[T]he multiplier is designed to reflect the fact that, no matter how many hours were invested, there was, at the outset, the possibility of no recovery."). When calculating an award of attorney's fees under the lodestar method, "a risk multiplier is not merely available in a common fund case but mandated, if the court finds that counsel had no sure source of compensation for their services." Florin, 34 F.3d at 565. In their lodestar submission, counsel did not request a specific risk multiplier, but the court finds, based on all the circumstances of this case including the relatively low level of proof needed to prevail on the merits of their TCPA claim and secure statutory damages, that a multiplier of 1.5 would be appropriate. See id. at 565 (suggesting that the requested multiplier of 1.53 was within the range of what would be "sensible"); see also Cook v. Niedert, 142 F.3d 1004, 1013 (7th Cir. 1998) ("We . . . have speculated that a multiplier of 2 may be a sensible ceiling."). This would result in a total fee award of $1,147,698.70, which would still equate to nearly three times the amount of actual recovery for the class members and slightly under 20% of the total settlement fund. The court also notes that this amount would be consistent with what counsel would have received under a one-third contingency fee arrangement in the event that counsel recovered the full statutory damages of $500 for each fax for the 7,222 offending faxes for which claims have been made.[6]

Based on the foregoing, the court denies without prejudice plaintiff's motion for attorney's fees and expenses and reserves ruling on the fairness of the class settlement. The court notes that it would approve an attorney's fee award of $1,147,698.70, as set forth above, but the court does not believe that it can unilaterally change the amount of attorney's fees that were contemplated by the settlement agreement without the consent of parties to the agreement. Therefore, plaintiff is granted leave to file an amended motion for attorney's fees and expenses (with additional documentation, if any) in accordance with this order. Any such motion should be filed within 30 days of this order.

---

1. If the two incentive awards are added in, the total payout to class members becomes $427,426.66, which is approximately 7.0% of the total settlement fund.

2. The parties could have structured their settlement so that the entire settlement fund was distributed on a pro rata basis to all the class members who submitted claims, after deducting attorney's fees and other costs. The court recognizes that Continental may not have agreed to such a settlement, but may have been amenable to paying a lower, but fixed, amount of money into the settlement fund. However, under this hypothetical settlement agreement, the amount of attorney's fees under the percentage method would have been significantly lower.

3. According to the biographies attached to their supplemental submission, the Bock & Hatch law firm has been appointed as class counsel in over 40 contested class actions, have represented classes in "dozens of class action settlements," and are currently litigating "dozens" of additional putative class action lawsuits. Similarly, Brian Wanca indicates that he has been appointed as class counsel

in 120 cases, the majority of which arise under the TCPA.

4. Counsel apparently was uneasy about the low rate of return since it was not included in their written submission and required a specific request from the court to bring it to light. In contrast, counsel was more than willing to provide very specific details, through the declaration of Nancy Johnson, on the number of successful faxes that were transmitted to potential class members during each of the three attempts at sending notice via fax.

5. It is worth noting that, under the terms of the settlement agreement, the class members who were harmed by defendant's conduct and would be entitled to recover $500 in statutory damages per fax are only receiving approximately 1/10 of their potential recovery, while at the same time class counsel is seeking an award that is roughly 3 times the amount they would receive if they had been paid at their hourly rate. Such a drastic discrepancy could cause the public to question whether the attorneys have fulfilled their duty of loyalty to the absent class members, or if they are only seeking to maximize their own recovery.

6. For example, if the case had gone to trial with a class consisting of 7,222 faxes, the statutory damages award would have been $3,611,000, and a one-third contingency fee would equal $1,203,666.66 under that scenario.